IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF/RESPONDENT

v.                          Civil No. 06-2056
                            Criminal No. 05-20020-001

HUMBERTO VALDEZ-RUIZ                                         DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Humberto Valdez-Ruiz brings this action under 28 U.S.C. § 2255 to vacate, set aside or correct sentence. A hearing was conducted on November 28, 2006. Witnesses were Valdez-Ruiz, Assistant Public Defender James Pierce, and Raphael Marquez, interpreter and investigator with the Public Defender's Office.

DISCUSSION

In 1988, Valdez-Ruiz, a native of Mexico, was convicted of second degree murder in Pima County, Arizona. (Govt's Ex. 10). In 2002, after serving time in prison, he was deported. He later reentered the United States illegally and was arrested after a traffic stop.

In March 2005, an indictment was returned charging Valdez-Ruiz with being present in the United States illegally following deportation subsequent to a conviction for an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and (b)(2). James Pierce was appointed to represent Valdez-Ruiz.

On April 12, 2005, shortly before the scheduled trial date, Valdez-Ruiz pled guilty pursuant to a plea agreement. In the agreement, Valdez-Ruiz acknowledged that he was subject to a

maximum term of imprisonment of 20 years, the United States Sentencing Guidelines would be considered but were not binding, and relevant conduct would be considered. (Govt's Ex. 5).

The presentence investigation (PSI) report (Govt's Ex. 6) assigned a base offense level of 8 pursuant to U.S.S.G. § 2L1.2. Illegal reentry after a conviction for an aggravated felony calls for an increase of 8 levels. § 2L1.2(b)(1)(C). However, because Valdez-Ruiz's murder conviction qualified as a "crime of violence," a 16-level increase was assessed. § 2L1.2(b)(1)(A); *Application Note 1(B)(iii)*. A 3-level reduction was given for acceptance of responsibility, § 3E1.1(a) and (b), resulting in an adjusted offense level of 21. With a criminal history category of II, the recommended guideline range was 41-51 months imprisonment.

Valdez-Ruiz filed objections to the PSI report. (*See* Govt's Exs. 7, 8, 9). He argued that the sentencing enhancement was based on facts found by a judge rather than a jury in violation of *Apprendi/Booker/Blakely*. He also asserted that the enhancement imposed additional punishment for the murder conviction in violation of the prohibition against ex post facto laws and the due process clause. At the sentencing hearing of August 16, 2005, Honorable Robert T. Dawson rejected the arguments and adopted the PSI report. Valdez-Ruiz was sentenced to 46 months imprisonment, 2 years supervised release, $1000 fine, and $100 special assessment. (Govt's Ex. 1, 11).

On May 11, 2006, Valdez-Ruiz filed the instant motion, claiming that his defense counsel coerced and intimidated him into pleading guilty and failed to filed a notice of appeal after being directed to do so. Valdez-Ruiz made clear at the hearing that he does not want his plea set aside and is only requesting a belated appeal.

Valdez-Ruiz testified at the hearing that Pierce coerced him into pleading guilty by telling him he would receive less time. He recalled that Pierce advised him of the expected guideline calculations and said he would receive three points off by pleading guilty.

Regarding the matter of appeal, Valdez-Ruiz stated that during the sentencing proceeding he advised the interpreter, Nancy Zechiedrich, that he wanted to appeal. He indicated his request was made in open court and should be in the sentencing transcript. However, no such request is found. The parties stipulated that if called to testify Ms. Zechiedrich would say that she specifically remembered Valdez-Ruiz and he did not ask for his attorney to pursue an appeal.

The testimony of James Pierce was supported by that of Raphael Marquez. Pierce testified that after reviewing discovery responses (Govt's Exs. 2, 3, 4), he realized the government had a solid case and spoke to Valdez-Ruiz about a plea and his likely sentence under the guidelines. Pierce said he advised Valdez-Ruiz of the expected 16-point enhancement and that three points could be deducted for acceptance of responsibility. Pierce recalled that the final sentencing range was more favorable than he had predicted to Valdez-Ruiz because he had overestimated the criminal history points. Pierce pointed out that by pleading guilty and receiving the three points, Valdez-Ruiz saved himself at least 11 months in prison. Pierce was asked about a notation in his file notes stating that the client could not understand why his previous aggravated felony conviction could be used to enhance his sentence. (Govt's Ex. 12). Pierce responded that although Valdez-Ruiz never liked or accepted the idea of the sentencing enhancement for the murder conviction, he knew about the enhancement at the time he entered his plea and agreed to the plea agreement. Pierce emphasized that his office time sheets (Govt's Ex. 14) show that he or others in his office conferred with Valdez-Ruiz on several occasions.

Regarding the matter of appeal, Pierce was "absolutely certain" that Valdez-Ruiz did not request an appeal prior to the deadline for filing a notice of appeal, August 29, 2005. Pierce's procedure is to speak with clients after sentencing through an interpreter regarding the matter of appeal. Pierce offered that if Valdez-Ruiz would have requested an appeal, he certainly would have followed through. The process takes about 15 minutes of his time and the appeal brief is handled by another attorney. Pierce pointed out that his case file notes (Govt's Ex. 13) do not mention an appeal. Pierce continued that he heard from a family member on the deadline day for filing an appeal but the request was for a copy of the file, not to pursue an appeal. In response, his office sent copies of file documents to Valdez-Ruiz. (Govt's Ex. 15).

On October 27, 2005, Valdez-Ruiz wrote a letter to the Clerk of Court stating he had lost all of his legal papers and did not remember his attorney's name. He asked the Clerk to "see if my appeal has been submitted" and to send him the name and address of the public defender. (Govt's Ex. 16). The Clerk's Office responded on November 1, 2005, that an appeal had not been filed and gave Pierce's name and address. A copy was sent to Pierce. (Govt's Ex. 17). On November 4, 2005, Pierce wrote Valdez-Ruiz a letter stating in part:

> I specifically remember after the hearing was concluded using the court certified interpreter to discuss with you about whether or not you wanted to file any appeal. At that time, in the presence of the interpreter, you stated you did not desire to file any appeal. Further, at no time after your sentencing have you ever communicated with me or this office to express that you had changed your mind or in any way wanted our office to file an appeal on your behalf, we would have [no] reason to do so. This is particularly true since we accept collect calls from our clients and given the fact that you and your family had called our office several times over the court of this representation.

(Govt. Ex. 18) .

On December 19, 2005, Valdez-Ruiz stated in a letter to Pierce that either he or the interpreter did not make themselves clear and he was requesting an appeal. On March 13, 2006, Valdez-Ruiz asked Pierce by letter if he had filed the appeal. (Govt's Ex. 20). Pierce responded on March 15, 2006, that he had already addressed the matter in his letter of November 4, 2005, which was attached. (Govt's Ex. 21).

At the hearing, Valdez-Ruiz admitted he did not want his plea and plea agreement set aside. He has therefore abandoned his claim that his plea was involuntary and unknowing. Moreover, the claim lacks any merit. To prevail on a claim of ineffective assistance during the plea process, a movant must show a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Pierce provided persuasive testimony that he did not coerce or intimidate Valdez-Ruiz in any way in the matter of the plea. Rather, he simply advised him that a guilty plea would result in less time in prison which, in fact, occurred.

Regarding the matter of appeal, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance of counsel entitling the movant to § 2255 relief. *Barger v. United States*, 204 F.3d 1180, 1181 (8th Cir. 2000). Here, however, Valdez-Ruiz has not shown that he directed Pierce to file a notice of appeal. In fact, the credible evidence shows that Pierce was not only not instructed to file an appeal but that Valdez-Ruiz told Pierce he did not want to do so after they conferred about the matter. Several months later, Valdez-Ruiz showed an interest in an appeal but it was too late to pursue an appeal by that time. Moreover, any appeal would have been futile. The Supreme Court has determined that enhancements based on

prior convictions may be properly assessed by a judge. *See United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 490 (2001). *See also Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

CONCLUSION

Based on the above, I recommend that the instant § 2255 motion be denied and dismissed with prejudice. **The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district judge.**

DATED this 1st day of December 2006.

/s/Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE